FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 JUN 13 A 9:15
CLERK'S OFFICE
AT GREENBELT
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

FARHAD RADFAR,

    Plaintiff,

v.

ROCKVILLE AUTO GROUP LLC, *et al.*,

    Defendants.

Case No.: GJH-16-3082

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Farhad Radfar, on behalf of himself and others similarly situated, brings this action against his former employer, Defendants Rockville Auto Group, LLC, Tuba Hamedi, and Abdullah Razaq (collectively, "Defendants") for failure to pay overtime and minimum wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Maryland Wage and Hour Law, Md. Code. Ann. Lab. & Empl. § 3-501 *et seq.* ("MWHL"). Now pending before the Court is Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 14, and Motion to Conditionally Certify a Collective Action, ECF No. 15.[1] No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Plaintiff's Motion to Amend is denied, in part, and granted, in part, and Plaintiff's Motion to Conditionally Certify a Collective Action is denied.

---

[1] Plaintiff has also filed an additional Motion requesting the Court to grant his Motion for Leave to Amend and Motion to Conditionally Certify because Defendants failed to file a timely reply in opposition in accordance with Local Rule 105(2)(a). ECF No. 16. The Court will consider this Motion to be a Renewed Motion for Leave to Amend and Motion to Conditionally Certify, not a separate, dispositive motion.

1

I.  **BACKGROUND**[2]

Defendants operate a car dealership in Gaithersburg, Maryland and "consistently advertised, bought and sold vehicles to vendors and clientele outside of the State of Maryland." ECF No. 14-1 ¶ 6.[3] Plaintiff worked for Defendants from approximately September 2014 to May 2016. *Id.* ¶ 12. Throughout his employment, Plaintiff alleges that he performed non-managerial and non-exempt work including purchasing parts and vehicles at auction with company funds, transporting vehicles to other lots and between vendors and purchasers, and delivering purchased vehicles to customers. *Id.* ¶ 13. Plaintiff alleges that Defendants authorized and required Plaintiff to work approximately 55 hours each week but did not pay Plaintiff overtime and minimum wages as required by Federal and State law. *Id.* ¶ 14. Plaintiff alleges that he was compensated at a standard weekly rate, resulting in the following effective hourly rates: $5.45 per hour from September 2014 through April 2015; $6.36 per hour from April 2015 through August 2015; and $7.27 per hour from August 2015 through May 2016. *Id.* ¶¶ 17–19.[4] Plaintiff alleges that although he was a long-term employee, Defendants paid Plaintiff as a "1099 employee" and did not classify Plaintiff as a "W-2 employee" or provide him with paystubs and paychecks until January 2016. *Id.* ¶ 15.

---

[2] Unless otherwise noted, the facts are taken from the Amended Complaint, ECF No. 14, and assumed to be true. Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[3] Plaintiff alleges that Defendants Hamedi and Razaq are co-owners of Rockville Auto Group LLC, a limited liability company formed under the laws of Maryland with its principal place of business in Montgomery County, Maryland. ECF No. 14-1 ¶¶ 2–4. According to Defendants Hamedi and Razaq, Rockville Auto Group LLC no longer exists as a legal entity. ECF No. 4 ¶ 1.

[4] Plaintiff's factual allegations regarding his weekly salary from September 2014 through August 2015 include what appear to be typographical errors and inconsistencies. Plaintiff states that from "August 2015 through May 2016, Plaintiff was compensated at a rate of $350 per week for approximately fifty-five (55) hours per week, for an hourly rate of approximately $7.27 per hour." The Court presumes that Plaintiff intended to allege that, as of August 2015, he was compensated at a weekly rate of $400 per week—fifty-five hours per week at $7.27 per hour equates to $400, an increase over his alleged salary for the preceding period. ECF No. 14-1 ¶ 19. Plaintiff also alleges that Defendants failed to pay him the minimum wage mandated by the FLSA from September 2014 through August 2016, *id* ¶ 22, yet Plaintiff states that his employment ended in May 2016, *id.* ¶ 12.

2

Plaintiff also alleges that Defendants failed to pay other similarly situated employees ("Putative Plaintiffs") overtime and minimum wages as required by Federal and State law. *Id.* ¶¶ 24, 26. According to Plaintiff, Defendants exercised a high degree of control over Plaintiff's and Putative Plaintiffs' employment, including hiring, firing, setting wage rates, sending paychecks, determining hours of employment and job duties, and establishing rules and regulations. *Id.* ¶¶ 28, 29, 31.

Plaintiff initially brought claims for violations of the minimum wage and overtime provisions of the FLSA and MWHL on behalf of himself (Count I, III, V–XI) and claims for violations of the minimum wage and overtime provisions of the FSLA on behalf of Putative Plaintiffs (Count III, V). ECF No. 1.[5] Defendants Hamedi and Razaq filed an Answer on November 11, 2016. Plaintiff filed a Motion for Leave to Amend his Complaint and Motion to Conditionally Certify a Collective Action on December 22, 2017. ECF Nos. 14; 15. Defendants did not file a response in opposition to either Motion, and, on February 5, 2018, Plaintiff filed a Renewed Motion. ECF No. 16. On February 20, Defendants filed a Response in Opposition to Plaintiff's Renewed Motion—sixty days after Plaintiff filed his initial Motions and fifteen days after his Renewed Motion. ECF No. 17.

## II. DISCUSSION

Pursuant to Local Rule 105.2(a), "all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion." Defendants did not file a timely memorandum in opposition, seek leave of Court for additional time, or provide any justification

---

[5] As set forth in the Amended Complaint, Plaintiff's FLSA minimum wage claim is limited to the time period from May 2014 through August 2015 (Count II). Plaintiff's MWHL claims are for the following time periods: September 2014 through December 2014 (Count VI); January 2015 to April 2015 (Count VII); April 2015 to June 2015 (Count VIII); July 2015 to August 2015 (Count IX); August 2015 to December 2015 (Count X); and January 2016 to May 2016 (Count XI). Again, as noted in *supra* n.4, the time period for Plaintiff's FSLA minimum wage claim does not coincide with his alleged dates of employment. *See* ECF No. 14-1 ¶ 12 (alleging that Plaintiff began work in September of 2014).

3

for their failure to do so. *See H & W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 252 (D. Md. 2000) *aff'd* 30 F. App'x 75 (4th Cir. 2002) (noting that because Rule 105.2(a) does not specify the consequence to be administered if the deadline is not met, the Court may decide whether to consider an untimely opposition); *Curtis v. Evans*, No. DKC 2003-2774, 2004 WL 1175227, at *1 (D. Md. May 27, 2004) (granting motion to strike a plaintiff's untimely opposition that fails to "explain the reasons, if any, for his tardy opposition"). Therefore, the Court will not accept Defendants' Opposition in Response, ECF No. 17, and will consider Plaintiff's Motions to be uncontested.

Although Plaintiff's motions are uncontested, the Court must exercise its judgment before granting them. *See, e.g., Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003) ("even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted"); *Brown v. Blue Cross and Blue Shield of North Carolina*, 226 F.R.D. 526, 527 (M.D. N.C. 2004) (reviewing the merits of an uncontested motion to dismiss "in the interest of justice," even though local rules permitted the court to grant the uncontested motion without further notice). Upon review, the Court finds that the Motions do not meet the requisite legal standards and will be denied.

### A. Motion for Leave to Amend

Plaintiff moves for leave to amend his Complaint to account "for the lack of rebuttal documentation from the defendant that have occurred since the original complaint was filed." ECF No. 14 at 1. Plaintiff's motion does not make clear what developments necessitate an Amended Complaint, and Plaintiff has not filed "a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been

underlined or set forth in bold-faced type" as required by the Court's Local Rules so that the Court can easily decipher what additions Plaintiff seeks to make. *See* Loc. R. 103.6(c) (D. Md. 2016). Regardless, the Court recognizes two substantive changes in Plaintiff's Amended Complaint. First, Plaintiff adds a new claim for breach of contract. ECF No. 14-1 at 22 (Amended Complaint Count XIII). Plaintiff alleges that he lent Defendants $75,000 pursuant to a promissory note executed in 2009 and seeks recovery of the remaining balance of $44,000 due on the note. ECF No. 14-1 at 7. Second, Plaintiff adds a new claim entitled "Rockville Auto Group's Misclassification of Its Service Agents as Independent Contractors Deprived Them of Tax Benefits and Other Employee Benefit Rights." ECF No. 14-1 at 8.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), plaintiffs may amend their complaint with the court's leave, and "[t]he court should freely give leave when justice so requires." "[T]he general rule is that leave to amend a complaint under Federal Rule of Civil Procedure 15(a) should be freely given, unless the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (citations omitted). Because the Court does not have jurisdiction over Plaintiff's proposed breach of contract claim, the amendment is futile and will be denied as to that added claim.

The Court does not have subject matter jurisdiction over Plaintiff's breach of contract claim under 28 U.S.C. § 1331 because the claim does not raise a federal question. Nor does the Court have jurisdiction under § 1332—the amount in controversy is less than $75,000 and the parties do not have complete diversity because both Plaintiff and Defendant Rockville Auto Group, LLC are Maryland citizens. Therefore, the Court may only hear Plaintiff's breach of

contract claim if it both has and chooses to exercise supplemental jurisdiction under § 1367, which provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III . . .

28 U.S.C. § 1367(a); *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). ("Supplemental jurisdiction thus allows parties to append state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy as the federal claims."). While § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction, a district court may only exercise such discretion if the claims are part of the same case or controversy. *See Saman v. LBDP, Inc.*, No. DKC 12-1083, 2012 WL 5463031, at *4 (D. Md. Nov. 7, 2012) (citing *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 245 (2d Cir. 2011)) ("The question of whether a court may exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), is decidedly different from whether it chooses to do so, pursuant to § 1367(c). The latter question involves the exercise of discretion; the former does not.").

Related claims form part of the same case or controversy when they arise "out of a 'common nucleus of operative fact' such that the plaintiff would ordinarily be expected to try these claims in one judicial proceeding." *White v. County of Newberry, S.C.*, 985 F.2d 168, 171 (4th Cir. 1993) (citing *Gibbs*, 383 U.S. at 725). Here, Plaintiff's breach of contract claim relies on facts that are wholly separate from Plaintiff's FLSA and MWHL claims. Defendants' alleged failure to properly classify Plaintiff as a non-exempt employee has no bearing on whether Plaintiff may recover the remaining amount due on his promissory note. *See id.* at 172 (supplemental claims "need only revolve around a central fact pattern"). The only connection

between Plaintiff's breach of contract claim and FLSA/MWHL claims is that the claims involve the same parties. But, without more, the parties' mere employee-employer relationship does not create a common nucleus of operative fact. *See Williams v. Long*, 558 F. Supp. 2d 601, 604 (D. Md. 2008) (citing cases from multiple jurisdictions where courts held that the employment relationship alone was insufficient to justify supplemental jurisdiction over state law claims). Therefore, the Court does not have supplemental jurisdiction over Plaintiff's breach of contract claim, and his Motion to Amend is futile as it relates to this claim.[6]

### B. Motion to Conditionally Certify a Collective Action

Plaintiff also moves to conditionally certify a collective action under the FLSA and provide Court-facilitated notice to Putative Plaintiffs. ECF No. 15. The FLSA authorizes employees to bring collective actions against their employers for failure to pay overtime and minimum wages:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 219(b); *see also Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008) (citing *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)) ("[Section 219(b)] establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit.").

---

[6] It is unclear whether Count I of Plaintiff's Amended Complaint is merely an extension of its already pending claims, but because the Motion to Amend is uncontested and the Court does not have concerns about its jurisdiction over this claim, the Court will permit this amendment.

Courts generally follow a two-stage process in deciding whether to certify an FLSA collective action. *See Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010). In the first stage, commonly referred to as the notice stage, the Court makes a "threshold determination of 'whether the plaintiffs have demonstrated that potential class members are 'similarly situated' such that court-facilitated notice to the putative class members would be appropriate.'" *Id.* (quoting *Camper*, 200 F.R.D. at 519). In the second stage, following the close of discovery, the Court conducts a "more stringent inquiry" to determine whether the plaintiffs are in fact "similarly situated," as required by Section 216(b). *See Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007). At this later stage, referred to as the decertification stage because it is generally triggered by the filing of a Motion to Decertify, the Court makes a final decision about the propriety of proceeding as a collective action. *See Syrja*, 756 F. Supp. 2d at 686.

When considering conditional certification, the "paramount issue in determining the appropriateness of a conditional class certification is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Williams v. Long*, 585 F. Supp. 2d 679, 684 (D. Md. 2008); *see also Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time").[7] "Although the Court need not reach a conclusive determination whether a class of similarly situated plaintiffs exists at the notice stage, there must be, at a minimum, evidence of such a potential class sufficiently developed at this time to allow court-facilitated class notice." *D'Anna v. M/A-COM, Inc.* 903 F.Supp. 889, 893 (D. Md. 1995) (internal quotation omitted); *see also Syrja*, 756 F. Supp. 2d at 686 (quoting *Purdham v. Fairfax*

---

[7] While *Sperling* reviewed a claim brought under the Age Discrimination in Employment Act, that statute incorporates § 216(b) for collective actions. *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

*Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) ("[w]hen sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, . . . a court can . . . deny certification outright")). Importantly, while a plaintiff need only make "a relatively modest factual showing" at the conditional certification stage, a plaintiff must rely on more than the allegations set forth in its complaint to suggest that potential class members are similarly situated. *See Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006); *see also Quinteros*, 532 F. Supp. 2d at 771–72. Here, Plaintiff has failed to set forth any evidence in support of the allegations in his Complaint, and this alone provides the Court with a sufficient basis to deny his Motion.

Additionally, Plaintiff's Complaint fails to set forth sufficient allegations to suggest that that he and Putative Plaintiffs are similarly situated. Plaintiff alleges that the potential class members are similarly situated for the following reasons: they all worked for Defendants as non-exempt hourly or daily rate earners; were subjected to Defendants' same rules and procedures; performed "similar duties and responsibilities of which they [were] paid pursuant to the same timekeeping procedure and payroll process;" and have not been paid overtime for those hours worked in excess of 40 per week. ECF No. 15 at 7. While Plaintiff's allegation that he and Putative Plaintiffs were victims of a common policy, scheme, or plan that violated the FLSA *could* establish that they are similarly situated, *see Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d. 560, 566 (D. Md. 2012), potential class members are not similarly situated when the members do not share similar job responsibilities. *See Yeibyo v. E-Park of DC, Inc.*, No. DKC 2007-1919, 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008) (citing *Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941 (M.D. Fla. 1994)) ("When determining if persons are 'similarly situated,' such persons must be similarly situated with respect to their job requirements and with regard to their

pay provisions; the positions need not be identical, only similar."); *see also Szalczyk v. CBC National Bank*, No. RDB-15-2011, 2017 WL 86014, at *4 (D. Md. Jan. 10, 2017) (denying conditional certification for employees having "significant distinctions between their respective job duties" because differences created a distinct legal issue as to whether the employees were exempt under FLSA); *Myles v. Prosperity Mortg. Co.*, No. CCB-11-1234, 2012 WL 1963390, at *7 (D. Md. May 31, 2012) (denying conditional certification for all loan officers that were categorized as exempt and had the primary duty of selling loans because the validity of the exemption was based on the amount of time the loan officers worked outside of the employer's office).

The facts alleged in Plaintiff's Complaint do not support Plaintiff's claim that he and Putative Plaintiff shared similar job responsibilities. Plaintiff indicates that potential class members include all current and former "lot porters" that have worked for Defendants during the last three years prior to Plaintiff filing the subject suit herein. ECF No. 15 at 8. Plaintiff states that his duties consisted of "purchasing parts and vehicles at auction, transporting vehicles between the vendor and purchaser, handling customer service, and delivering purchased vehicles," ECF No. 14-1 ¶ 6, but does not state that he was a lot porter or that lot porters perform similar functions.[8] The only evidence that Plaintiff provides—his promissory note—reveals that Plaintiff had an ownership or profit sharing interest in the business, suggesting that Plaintiff's employment status was on a different footing than those who simply managed the vehicle stock on Defendants' property (if that is in fact what lot porters do). *See* ECF Nos. 14-2; 14-3. Conditional certification is inappropriate where the claims require "substantial individualized determinations for each class member." *Syrja*, 756 F. Supp. 2d at 686 (quoting *Purdham*, 629 F.

---

[8] Plaintiff's Complaint omits any reference to "lot porters" and fails to characterize the job responsibilities of Putative Plaintiffs beyond the conclusory allegation that their job responsibilities were similar to his. ECF No. 14-1 ¶ 11.

Supp. 2d at 547), and Plaintiff's claims will implicate distinct questions of law and fact as to whether he is exempt from FLSA's minimum wage and overtime protections. *See Archer v. Freedmont Mortg. Corp.*, No. GLR-12-1099, 2013 WL 93320, at *4 (D. Md. Jan 7, 2013) (denying conditional certification where adjudication of multiple claims would require "an unmanageable assortment of individualized factual inquiries" including an examination of each potential class member's job duties). Therefore, Plaintiff's Motion to Conditionally Certify a Collective Action will be denied.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 14, shall be granted, in part, and denied, in part, and Plaintiff's Motion to Conditionally Certify a Collective Action, ECF No. 15, shall be denied. A separate Order follows.

Dated: June 12, 2018

GEORGE J. HAZEL
United States District Judge