**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **FARHAD RADFAR,** | * |
| Plaintiff, | * |
| v. | Case No.: GJH-16-3082 |
| | * |
| **ROCKVILLE AUTO GROUP, LLC,** *et al.*, | |
| | * |
| Defendant. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Farhad Radfar seeks to recover unpaid wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), and the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* (MWHL), from Defendants Rockville Auto Group, LLC, Abdullah Razaq, and Toba Hamidi.[1] Pending before the Court is Defendants' Motion for Summary Judgment. ECF No. 22. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion for Summary Judgment is denied.

**I.    BACKGROUND[2]**

Plaintiff Farhad Radfar worked at Defendant Rockville Auto Group between September 2014 and May 2016. ECF No. 24-3 ¶ 1. Plaintiff and his wife Mozghan Rezaei also agreed to lend Rockville Auto and Defendant Abdullah Razaq $57,000. *Id.* ¶¶ 14–17; ECF No. 22-3.

When Plaintiff began working for Defendants he was told that if he lent Razaq a no-interest loan, Razaq would use the loan to buy cars and Plaintiff would be entitled to be repaid the balance of the loan as well as half the profit of each car purchased with the loan's assistance

---

[1] The Clerk shall correct the spelling of Toba Hamidi's name on the docket.
[2] These facts are either undisputed or viewed in the light most favorable to the Plaintiff as the non-movant.

and resold to customers. ECF No. 24-3 ¶ 14. Plaintiff discussed this proposal with his wife Rezaei and the two agreed to lend Rockville Auto and Razaq money as part of a loan agreement, which would supplement Plaintiff's regular income from Rockville Auto. *Id.* ¶ 15.

The parties (borrowers, Razaq and Rockville Auto, and lenders, Radfar and Rezaei) then signed a Promissory Note memorializing their agreement. ECF No. 22-3. The Note explains that the borrowers would use the lender's $57,000 loan to purchase vehicles for resale and entitled the lenders to 50% of the net profit for each vehicle. *Id.* at 1. Defendants claim that based on the loan agreement, Plaintiff entered a business relationship with Rockville Auto and had "space to operate his own business," ECF No. 22-2 ¶ 3, however nothing in the Note suggested that the lenders would play a role in purchasing or selling vehicles on behalf of Rockville Auto or that the Note authorized Radfar or Rezaei to conduct any business on behalf of Rockville Auto. ECF No. 22-3 at 1; *see also* ECF No. 24-3 ¶ 18–19. Additionally, the Note did not discuss the terms of Radfar's employment with Rockville Auto. ECF No. 22-3. Although Defendants characterize Plaintiff as an investor, ECF No. 22-2 ¶ 2, Plaintiff was not a Rockville Auto shareholder and he did not hold a security interest in the business, ECF No. 24-6 at 32; ECF No. 22-3.

According to Plaintiff, during his employment with Rockville Auto, Defendants Abdullah Razaq and Toba Hamidi served as his managers. ECF No. 24-3 ¶¶ 7, 9, 12, 13. Razaq supervised Radfar's day-to-day tasks, *id.* ¶¶ 9–10, and as the sole owner of the Rockville Auto Group, Hamidi had authority over Plaintiff's schedule and pay, *id.* ¶¶ 12–13; *see also* 24-4.

Throughout his tenure, Radfar worked approximately fifty-five hours each week, performing tasks such as attending car auctions with Razaq, transporting vehicles between lots, vendors, and mechanics, and delivering purchased vehicles to customers. ECF No. 24-3 ¶¶ 2, 3,

4. Radfar did not have the right to purchase vehicles on Rockville Auto's behalf when he attended car auctions with Razaq nor was he responsible for selling cars. *Id.* ¶ 10.

Until January 2016, when Defendants began providing Plaintiff with paystubs and classified him as a W-2 employee, Defendants issued Plaintiff payments as a 1099 employee and did not withdraw state and federal taxes from his paycheck. *Id.* ¶ 5; ECF No. 24-7. For a certain time, Defendants compensated Plaintiff $300 each week for approximately fifty-five hours of work—an hourly rate of $5.45. ECF No. 24-3 ¶ 5; ECF No. 24-10 at 1, 3. Later, Defendants compensated Plaintiff $400 for his approximately fifty-five-hour workweek, an average hourly wage of $7.27. ECF No. 24-3 ¶ 5; ECF No. 24-10 at 4–10, 13–17.

Not distinguishing between Plaintiff's employee income and Plaintiff's income based on the loan agreement, Defendants assert that during Plaintiff's 20-month working relationship with Rockville Auto, Plaintiff received about $120,000 in net profits from sales of automobiles, weekly fixed payments, and other payments. ECF No. 22-2 ¶ 5. However, according to Plaintiff, he received $4,469.32 from Rockville Auto in 2014, ECF No. 24-7 at 1, $17,728.00 in 2015, *id.* at 2, and $8,900 for 2016, *id.* at 3—a total of $31,097.32.

After Plaintiff's relationship with Rockville Auto ended, Plaintiff brought this federal and state wage law case on September 6, 2016, alleging that Defendants failed to pay him minimum wage and overtime wages in violation of the FLSA and the MWHL.

## II.     STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond*

*Auto Glass,* 242 F.3d 179, 183 (4th Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson,* 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). The Court may rely on only facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

### III. DISCUSSION

Defendants move for summary judgment, claiming that the undisputed facts establish that Plaintiff was not their employee under the FLSA or MWHL. Even if Plaintiff's employee status remains disputed, Defendants argue that they are entitled to partial summary judgment because Plaintiff was an exempt-employee to whom the FLSA and MWHL's overtime requirements do not apply and Defendant Hamidi was not an employer. These arguments are addressed in turn.

#### A. Plaintiff's Employee Status

Under the FLSA and the MWHL, employers must pay both a minimum wage and overtime compensation to non-exempt employees who work more than forty hours per workweek. *See* 29 U.S.C. §§ 206, 207(a); MWHL §§ 3-413, 3-415, 3-420. The FLSA defines an "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and the MWHL incorporates this definition, MWHL § 3-413. Whether a plaintiff is an "employee" is

ultimately a question of law, and the FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir.2006) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g))). To define the relationship between Plaintiff and Defendants, "[t]he focal point is whether the worker 'is economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself.'" *Id.* (brackets omitted). The Fourth Circuit uses a six-factor test to determine whether an individual is an employee or is "in business for himself":

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business. *Schultz*, 466 F.3d at 304–05.

"No single factor is dispositive," *id.* at 305, and "the lived reality of the worker is paramount and supersedes any categorization that a business may have made of its workers, even when the parties have signed a putative independent contractor agreement and the business routinely issues 1099s, rather than W-2s." *Guerra v. Teixeira*, No. CV TDC-16-0618, 2018 WL 3756716, at *4 (D. Md. Aug. 8, 2018) (citing *McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 239 & 241 (4th Cir. 2016) and *Randolph v. PowerComm Constr., Inc.*, 7 F. Supp. 3d 561, 569 n.5 (D. Md. 2014)).

Here, the record reflects a fundamental disagreement between the parties about the economic realities of their working relationship. Defendants describe a business relationship in which Plaintiff invested in Rockville Auto, was provided a portion of the profits of certain vehicle sales and had "space to operate his own business." ECF No. 22-2 ¶ 2–3. In contrast,

Radfar asserts that Defendants exercised a high degree of control over him, assigning his hours and job duties and determining the rate and method of his pay. ECF No. 24-3 ¶ 9, 12. According to Plaintiff, he had no authority to purchase or sell a car, and his daily, non-managerial tasks were supervised by Razaq. *Id.* ¶ 3, 9–10. Per Plaintiff's version of events, although Radfar obtained 50% of the profits from certain car sales based on the parties' loan agreement, Plaintiff's opportunities for profit or loss did not depend on his own skills because he was not authorized to make sales. *Id.* Further, Plaintiff's tasks—driving purchased vehicles to the main lot, between vendors and mechanics, or to customers—did not require a high degree of skill. *Id.* ¶ 3.

The additional record evidence does not resolve the contradictions between Plaintiff and Defendants' sworn declarations. The Promissory Note governing Plaintiff and Rezaei's $57,000 loan to Defendants Razaq and Rockville Auto does not definitively establish the economic reality of the parties' business relationship. ECF No. 22-3. It does not describe the terms of Plaintiff's employment or detail whether Plaintiff had authority to purchase or sell vehicles or to operate his own business. *Id.* That Rockville Auto routinely issued Plaintiff 1099s before classifying him as a W-2 employee also does not address the lived reality of Plaintiff's working relationship with Defendants and is not alone determinative. *Randolph v. PowerComm Constr., Inc.*, 7 F. Supp. 3d 561, 569 n.5 (D. Md. 2014) ("the manner in which Plaintiffs were classified for tax purposes" is not "dispositive in determining their status as employees").

In sum, multiple genuine disputes material fact remain, many of which cannot be resolved without an assessment of Plaintiff and Defendants' credibility as witnesses; thus, summary judgment on Radfar's status as an employee for FLSA and MWHL purposes will be denied.

### B. Applicability of Overtime Requirements

The next issue is whether Plaintiff was an exempt-employee for whom federal and state overtime requirements would not apply. The FLSA's overtime requirements do not apply to some exempt employees, including "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." 29 U.S.C. § 213(b)(10)(A). Similarly, per MWHL's exemptions, overtime wages need not be paid to "a mechanic, partsperson, or salesperson who primarily sells or services automobiles, farm equipment, trailers, or trucks, if the employer is engaged primarily in selling those vehicles to ultimate buyers and is not a manufacturer." MWHL § 3-415(c)(2).

The Department of Labor, which issues and enforces FLSA regulations, defines salesman as "an employee who is employed for the purpose of and is primarily engaged in making sales or obtaining orders or contracts for sale of the automobiles, trucks, or farm implements that the establishment is primarily engaged in selling." 29 C.F.R. § 779.372(c)(2). "Work performed incidental to and in conjunction with the employee's own sales or solicitations, including incidental deliveries" is also exempt from the FLSA's overtime requirement. *Id.* A salesman is "primarily engaged" in making sales or obtaining orders or contracts if "the major part or over 50 percent" of his time is "spent in selling" vehicles. 29 C.F.R. § 779.372(d)

As with Radfar's status as an employee, the parties fundamentally disagree about whether Plaintiff played the role of a salesman, and they put forward divergent facts in support of their positions. Specifically, Razaq claims that Plaintiff had space to operate his own business within

the Rockville Auto car dealership, meaning Plaintiff was engaged in "making sales or obtaining orders or contracts for sale of the automobiles . . . that the establishment [was] primarily engaged in selling." 29 C.F.R. § 779.372(c)(2). However, Radfar to the contrary claims that he was not authorized to sell vehicles. ECF No. 24-3 ¶ 4. Although Radfar did perform work incidental to sales such as customer deliveries, *id.* ¶ 3, these tasks were not performed in conjunction with his "own sales or solicitations" given that he claims he was not authorized to make sales, *id.* ¶ 4, 7, 10. Even if Razaq's declaration established that Radfar made sales (it does not), Defendants' evidence does not demonstrate that "the major part or over 50 percent" of Radfar's time was spent selling Rockville Auto's vehicles.

Taken together, genuine disputes of material fact remain, and Defendants are not entitled to partial summary judgment on Plaintiff's overtime claims based on their claim that he was an exempt employee.

### C. Defendant Hamidi's Employer Status

Finally, Defendants argue that Defendant Hamidi is entitled to summary judgment because she was not Plaintiff's employer.

Employer is defined as a "person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see also* MWHL § 3-401. Again, the "economic reality" test governs. *See e.g.*, *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 416 (D. Md. 2013). To determine whether an individual qualifies as an "employer," courts in this district often analyze an individual's "1) authority to hire and fire employees; (2) authority to supervise and control work schedules or employment conditions; (3) authority to determine the rate and method of payment; and (4) maintenance of employment records." *Id.* at 413, 416.

Here, Plaintiff has provided evidence disputing Hamidi's declaration that she did not have authority to hire or fire company employees, did not determine work schedules or conditions of employment, did not determine the rate and method of employee payment, and did not maintain employment records. First, records show that Hamidi was the sole owner of Rockville Auto and from this ownership status a factfinder could reasonably infer that Hamidi had the authority of an employer. ECF No. 24-4. Further, Plaintiff asserts in a declaration that Hamidi had authority as his manager and that she actively managed financial decisions. ECF No. 24-3 ¶ 12.

In short, genuine disputes of material fact preclude summary judgment on Hamidi's status as an employer.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied. A separate Order shall issue.

Date: <u>February 8, 2019</u>    \_\_\_\_/s/_____
GEORGE J. HAZEL
United States District Judge